DANIEL B. CHILDS and HERBERT G. HULL, Respond-
ents, v. GEORGE J. SEABURY, Appellant, Impleaded
with HENRY C. PORTER.

*Covenant — damages — measure of.*

April 20, 1871, the plaintiffs entered into an agreement with the defendants,
who were then already partners in business, by which a limited part-
nership was formed. The plaintiffs contributed the sum of $10,000 upon
the assurance of the defendants that their assets then exceeded their liabilities
by the sum of $10,540.61, and upon their agreement to themselves pay and
discharge all the existing indebtedness of the old firm. They did not do this,
but used the money furnished by the plaintiffs, for that purpose. In April, 1872,
the plaintiffs extended the partnership to July 1, 1875. October 21, 1872, the
firm became insolvent, made a general assignment, compromised with their
creditors and procured a release from them. Subsequently, the plaintiffs having
discovered the use to which the defendants had put the capital contributed by
them, brought this action to recover damages for a breach of the agreement
made with them.

*Held,* that as it appeared that all the debts of the old firm had been paid or dis-
charged no damages could be recovered because of the failure of the defend-
ants to pay them from their own funds.

That as it did not appear that the misappropriation of the plaintiffs' capital was
the cause of the firm's failure, such failure did not justify the recovery by the
plaintiffs from the defendants of the amount of capital they had contributed as
damages for the breach of their agreement.

APPEAL from a judgment in favor of the plaintiffs, entered upon
the report of a referee.

*Roger A. Pryor*, for the appellant.

*William G. Choate*, for the respondents.

Brady, J.:

This action was brought to recover damages for the breach of an
agreement contained in articles of copartnership bearing date the
20th of April, 1871. The defendants were then copartners under
the name of Seabury & Porter, and were possessed of certain assets
which they stated to the plaintiffs would exceed their liabilities by
the sum of $10,540.61. The partnership formed was limited, the
plaintiffs contributing, as special partners, the sum of $10,000 in
cash. The business was dealing in drugs, medicines and other

commodities such as are usually dealt in by druggists, wholesale and retail, and was to be continued by the defendants, by the articles of copartnership, for one year. In consideration of the plaintiff's contributions, the defendants covenanted and agreed that they would assume, pay and discharge all the existing indebtedness of the old firm of Seabury & Porter. The defendants, it appears, did not assume, pay or discharge the existing indebtedness of the old firm prior to its dissolution, and used the capital furnished by the plaintiffs without their knowledge and consent, not for the general business purposes of the firm, but for the payment of such debts and liabilities. No part of the plaintiffs' capital was replaced by them.

It also appears that on the 19th of April, 1872, upon the representations of the defendants that the copartnership had made a profit of $7,000, the plaintiffs, in ignorance of the appropriation of the special capital to the payment of the debts of the old firm, consented to continue and extend the copartnership until July 1, 1875. Six months after that arrangement, and on or about the twenty-first of October, the firm became insolvent, failed, and made a general assignment of all its property for the benefit of its creditors. Sub sequently a composition was made by which the creditors of the firm were paid twenty-five per cent of their claims, and the assignee and the defendants were released from all their demands.

It also appears that the defendants concealed from the plaintiffs, by false entries in the books, the violation of the copartnership agreement in the respect named, and it was not until after the failure of the firm that the defendants learned of the use of the capital contributed by them in payment of the debts of the old firm. And it also appears that in April, 1872, the defendants paid to the plaintiffs the sum of $2,519.85, which they stated was the plaintiffs' share of the profits; and further, that after the failure of the firm the plaintiffs realized from the assets, under an arrangement with the defendants, the sum of $1,072.42.

These sums were applied by the referee in reduction of the plaintiffs' damages. The referee found the plaintiffs were entitled to recover from the defendant the sum of $7,484.14, being the difference between the amount contributed by them and the sums already mentioned received by them as profits out of the assets. So that, in the judgment of the referee, the plaintiffs were entitled

to recover the amount of capital contributed by them, less the payments received on account already mentioned.

The question presented is whether the plaintiffs are entitled to recover in this action upon the alleged breach of contract in omitting to pay the debts and liabilities of the old firm as contemplated by the articles of copartnership. The learned counsel for the appellants contends that the covenant to pay the debts and liabilities has no legal force for the reason that the defendants were only agreeing to do what they were legally bound to do. And this is founded upon the old legal maxim, "*expressio eorum quæ tacite insunt nihil operatur*," and the old rule that a promise to do what one is already legally bound to do, is so absolutely void and inoperative that it cannot constitute a consideration for a contract. But neither the rule nor the maxim has any application to a case where the promise is made to a third party as a consideration for his doing what he would not be bound to do had he not obligated himself by a contract which rested in part for its consideration upon the promise on the part of the debtors to pay their debts, and impliedly by some means or fund of theirs which could be devoted or appropriated to that purpose. In other words, the construction of the contract between the parties in this case must be that they were to pay all the debts of the old firm out of their assets, either firm or personal, and not out of the capital furnished by the plaintiffs which was to be used for the benefit of the copartnership as such, and therefore to matters pertaining to the new partnership, and not for the purpose of settling old claims. It was to be used, to state it more briefly, as capital in the new concern, and for nothing else.

It may perhaps be said, with great legal emphasis, that the failure of the defendants to pay the debts of the old firm out of their property was a breach of the covenant, and that a right of action might have been maintained when that was discovered. (*Matter of Negus*, 7 Wend., 501; *Port* v. *Jackson*, 17 Johns., 239; *Jackson* v. *Port*, Id., 479; *Rector, etc.*, v. *Higgins*, 48 N. Y., 536.)

But no action was commenced until after the failure of the firm, and, indeed, until after a compromise with the creditors of the firm had been accomplished and all its obligations discharged. When this action was commenced, therefore, the covenant had been satisfied and the claim paid. And that fact would seem to

be a complete answer to the plaintiffs' cause of action in *limine*, although the plaintiffs' right of action could not be limited by that circumstance. If it had appeared in the case that in consequence of the misappropriation of the capital contributed by the plaintiffs the firm failed, the plaintiffs would be entitled to the benefit of that circumstance, and, as a result, to the recovery of their capital, less the amount they might have received from the copartnership, out of any profits or assets. Upon that subject the referee has distinctly found that it does not appear from the evidence that the firm failed by reason of the alleged misuse of the capital contributed by the plaintiffs. And it thus appears that the plaintiffs' right to recover the sum which was awarded them was based upon a technical rule of law — technical because the covenant was performed, but not in the manner contemplated by its terms.

It is conceded, indeed it is one of the facts of which the claim is predicated, that the defendants' debts were paid, and by the plaintiffs' money. In the absence of proof that the firm failed in consequence of such misappropriation, the inference must be that disaster arose from circumstances not unusual in commercial life, which occasions losses even when the business is conducted with seeming judgment and skill. When the capital of the plaintiffs was contributed by them it was based not only upon the promise of the defendants in reference to their old liabilities, but upon the judgment and capacity of the defendants to conduct the business contemplated, a duty devolving entirely upon them, the plaintiffs, as special partners, having no right under the law to interfere with them or to participate in it unless they desired to make themselves liable as general partners. It was a hazard, therefore, subject to the usual or unusual vicissitudes of business life; to the chance contingencies of trade; and they could not expect to be repaid the capital unless the business in which they had invested it was sufficiently successful to provide for it; and whether it would be or not would depend upon facts and circumstances which could not be anticipated, however brilliant the prospects of the enterprise at the time it was formed.

The law administered in this State at present does not rest upon mere technical rules, but upon the broader basis of right, and in the investigation of claims upon the whole law of the land, legal

and equitable. In contemplation of these principles, it does not appear that the plaintiffs have sustained any wrong for the reason stated, namely, that there is no evidence that the failure of the defendants was produced by the misappropriation of the capital; and without proof of that as a fact the plaintiffs are not entitled to succeed. They embarked their money in an enterprise which was not successful, and must accept the consequences. It is true the evidence discloses that the defendants were dishonorable in reference to the plaintiffs' fund, having by false entries concealed the fact that it had been appropriated in a manner not author ized by the contract. But this has no material bearing upon the real question at issue herein, which was whether the plaintiffs had sustained any damage, as already intimated.

For these reasons it is thought that the judgment was erroneous, and should be reversed and a new trial ordered, with costs to abide the event.

DANIELS, J., concurred.

Judgment reversed, new trial ordered, with costs to abide event.